Joshua R. Hendrickson, Nev. Bar. No. 12225
josh@hendricksonlawgroup.com
HENDRICKSON LAW GROUP, PLLC
325 W Liberty St
Reno, Nevada 89501
Tel. (775) 502-8332

Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

*Attorneys for Plaintiff and all others
similarly situated.*

MONTGOMERY Y. PAEK, ESQ.
Nevada Bar No. 10176
AMY L. THOMPSON, ESQ.
Nevada Bar No. 11907
MICHAEL D. DISSINGER, ESQ.
Nevada Bar No. 15208
LITTLER MENDELSON, P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, Nevada 89169.5937
Telephone:    702.862.8800
Fax No.:       702.862.8811
mpaek@littler.com
athompson@littler.com
mdissinger@littler.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LEANN MERCER, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CAESARS ENTERTAINMENT, INC.; PARIS LAS VEGAS OPERATING CO., LLC; and DOES 1 through 50, inclusive, | Case No.:  2:23-cv-00958-MMD-NJK<br><br>**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT** |

Defendants.

COMES NOW Plaintiff LEANN MERCER,[1] on behalf of herself and all others similarly situated ("Plaintiffs"), and CAESARS ENTERTAINMENT, INC.; PARIS LAS VEGAS OPERATING CO., LLC ("Defendants") (with Plaintiffs and Defendants collectively referred to as the "Parties") and hereby move this honorable Court pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Fair Labor Standards Act ("FLSA") for an order:

(1)     Preliminarily approving the class and collective action settlement between Plaintiffs, Defendants, and unnamed Doe entities Parball Newco LLC and Rio Properties LLC (collectively, "Doe Defendants");

(2)     Preliminarily certifying the Rule 23 and 29 U.S.C. § 216(b) Class for purposes of settlement;

(3)     Scheduling a hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable and adequate as to the class members; and

(4)     Approving the manner and form of Notice and proposed distribution plan to class members.

This motion is based the following Memorandum of Points and Authorities in support thereof, the settlement agreement and exhibits thereto attached and filed herewith as Exhibit 1 to the Declaration of Joshua R. Hendrickson, Esq., the Declaration of Montgomery Y. Paek, Esq., the Declarations of Leann Mercer, Jocelyn Lewis, and Mike Brady submitted in support of this Motion, all pleadings and papers on file in this action, and such other matters as the Court may consider.

---

[1] Contemporaneously with the filing of this Motion, the Parties have stipulated to the filing of an amended complaint adding Jocelyn Lewis and Mike Brady ("Proposed Plaintiffs") as named Plaintiffs in this action.

Dated: March 27, 2024

*/s/Joshua R. Hendrickson*
Joshua R. Hendrickson
HENDRICKSON LAW GROUP, PLLC

Mark R. Thierman
Joshua D. Buck
Leah L. Jones
THIERMAN BUCK, LLP

*Attorneys for Plaintiff and all others
similarly situated.*


*/s/ Amy L. Thompson*
Montgomery Y. Paek
Amy L. Thompson
Michael D. Dissinger
LITTLER MENDELSON, P.C.

*Attorneys for Defendants*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND OVERVIEW OF SETTLEMENT TERMS

Plaintiff, LEANN MERCER ("Plaintiff") and Defendants, CAESARS ENTERTAINMENT, INC. and PARIS LAS VEGAS OPERATING CO., LLC ("Defendants") (with Plaintiffs and Defendants collectively referred to as the "Parties") seek preliminary approval of this class and collective action settlement ("Settlement") pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Fair Labor Standards Act (FLSA). Plaintiff and Defendants participated in two mediations with mediator Hunter Hughes, where after extensive discussions, the Parties reached a proposed settlement through arms-length negotiations.

The Parties have come to a settlement in this action for a total maximum settlement amount of $5,650,000.00 to be paid to class members on a claims-made basis. The Settlement Amount is reversionary, meaning that any unclaimed amounts will be returned to Defendants.

All of the terms of the Settlement[2] have been agreed upon as follows:

- Approximately $3,704,166.67 in estimated settlement funds to the Class;[3]

- Approximately $30,000.00 in Settlement Administrator's reasonable fees and expenses approved by the Court;

- $15,000.00 each as Enhancement Awards to Plaintiff, Leann Mercer, and Proposed Plaintiffs, Jocelyn Lewis and Mike Brady, as Class Representatives;[4]

---

[2] This Motion incorporates by reference the definitions in the Settlement Agreement between Plaintiff and Defendants and terms used herein shall have the same meaning as set forth in the Settlement Agreement, hereinafter "Settlement" or "Settlement Agreement" attached as Exhibit 1 to the Declaration of Joshua R. Hendrickson, hereinafter "Hendrickson Dec." at ¶ 3.

[3] The dollar amounts provided are approximations based on the pending approval by this Court of Class Counsel's fees and costs, the Settlement Administrator's fees, as well as Court approval of the Class Representative's Enhancement Awards. *See* Hendrickson Dec. at ¶ 10.

[4] *See* Ex. 1, Settlement at § III.B.1: Subject to Court Approval, "Named Plaintiffs Leann Mercer, Jocelyn Lewis, and Mike Brady will apply to the District Court for an award up to Fifteen Thousand Dollars and Zero Cents ($15,000.00) to each Plaintiff as their Class Representative Payment. Defendants will not oppose a Class Representative Payment of up to $15,000.00 for each Plaintiff."

- $1,853,333.33 in attorneys' fees;[5] and

- $17,500.00 in costs.

*See* Exhibit 1, "Settlement" at §§ III.B.1-4; Hendrickson Dec. at ¶ 3.

To promote a more effective administration of Notice and to accommodate Defendants' business needs, the Parties have agreed to set the notice period outside of the 2024 World Series of Poker ("WSOP") season, which will begin in late May and last until late July this year. During the WSOP season, many dealers will come to Las Vegas from outside of the Las Vegas area and will be away from their regular home addresses, which would interfere with the effective administration of notice as well the business operations of the 2024 WSOP. To avoid this result, the Parties have agreed "to work together to obtain the District Court's preliminary approval as expeditiously as possible, with the intent of issuing the Class Notice Packet to every Class Member by April 1, 2024 such that all claims must be filed by May 1, 2024." Ex. B, Settlement at § III.D.1.b.

In line with this goal, the Parties are not requesting a hearing on this Motion and the Parties respectfully request that this Motion be decided on the moving papers as expeditiously as possible. An expeditious decision on the papers would promote a fair, effective, and efficient administration of Notice and is in line with the past practice of this Court. While a hearing is required for final approval of a potential Settlement, no such hearing is required at the earlier preliminary approval stage. *See, e.g., Nelson v. Wal-Mart Associates, Inc.*, Case No. 3:21-cv-00066-MMD-CLB (August 15, 2023 Order Granting Motion for Preliminary Approval of Class and Collective Action Settlement) *and DeWeese v. ITS National, LLC*, Case No. 3:18-cv-00375-MMD-WGC (March 20, 2019 Order Granting Preliminary Approval of Class Action Settlement) (attached to the Hendrickson Dec. as Exhibits 2 and 3, respectively).

---

[5] *Id.* at § III.B.2: Subject to Court approval, "Class Counsel will apply to the District Court for an award of slightly less than one third of the Maximum Settlement Amount, specifically One Million Eight Hundred Fifty-Three Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($1,853,333.33), as their Class Counsel Fees Payment . . ., and Defendants will not oppose their request."

## II.       PROCEDURAL HISTORY AND FACTUAL BACKGROUND[6]

Plaintiff Leann Mercer filed her class and collective action complaint in this action in the Eighth Judicial District Court of the State of Nevada, in and for the County of Clark, on May 12, 2023, alleging five causes of action: (1) Failure to Pay Overtime in Violation of 29 U.S.C. § 207, *et al.*; (2) Failure to Pay Minimum Wages in Violation of the Nevada Constitution and § NRS 608.250; (3) Failure to Compensate for All Hours Worked in Violation of NRS 608.016 and 608.140; (4) Failure to Pay Overtime in Violation of NRS § 608.018 and NRS § 608.140; and (5) Failure to Pay Wages Due and Owing in Violation of NRS 608.020-.050 and NRS 608.140. (ECF No. 1-3.) Plaintiff's allegations arise from Defendants' policies and practices of allegedly failing to include non-discretionary payments in overtime calculations and allegedly failing to pay for time worked attending required training sessions. *Id.* Defendants deny these allegations in their entirety and deny all liability. Defendants contend that a class or collective action could not properly be certified in this action if it were litigated, that the putative class members were properly paid all wages under federal and state law, that Defendants did not violate the FLSA or Nevada Statutes, and that Defendants are not liable for any of the penalties claimed in the Complaint.

Defendants filed their Notice of Removal to federal court on June 21, 2023. (ECF No. 1.) In addition to named Plaintiff Leann Mercer, seven additional plaintiffs opted into the Litigation on June 26, 2023: Phillip Fife, Rose Raiti, Michael Champoux, Joceyln Lewis, Mike Brady, Randy Ferguson, and Matthew Francis. (ECF No. 6.). Contemporaneously with the filing of this Motion, the Parties have stipulated to the filing of an amended complaint adding Jocelyn Lewis and Mike Brady as named plaintiffs in this action.

On July 21, 2023, this Court granted the Parties' stipulation to stay this action for 120 days to allow the Parties to engage in settlement discussions. (ECF No. 9) On October 25, 2023, the Parties attended a full-day mediation session with mediator Howard Hughes. The Parties did not settle the action on that date but continued to engage in settlement discussions. On October

---

[6]  Defendants do not concede Plaintiff's allegations, nor do they concede the factual statements or characterizations of legal positions set forth herein. For purposes of this Settlement, however, Defendants do not oppose the filing of this Motion or the granting of preliminary approval.

31, 2023, the Parties submitted a second stipulation to extend the stay for 30 days to allow for continued settlement discussions (ECF No. 11), which this Court granted the following day. (ECF No. 12.) On November 28, 2023, the Parties submitted a second stipulation to extend the stay for an additional 45 days for the same reason (ECF No. 13), which this Court granted on November 29, 2023. (ECF No. 14.) The Parties attended a second mediation session with Mr. Hughes on January 15, 2024 and shortly thereafter were able to reach resolution through the continued efforts of Mr. Hughes, thereby reaching an arms-length agreement to settle the claims in the Litigation as set forth in the Settlement Agreement. *See* Hendrickson Dec. at ¶ 7.

For the purpose of settling this case, the Parties stipulate and agree to the certification of the following Settlement Class:[7]

> Settlement Class: Plaintiff and the approximately 1,975 non-exempt hourly employees who worked for Defendants or other Released Parties as poker dealers in a Covered Position at the WSOP, occurring annually in Paradise, Nevada in 2021 (September 30, 2021 through November 23, 2021), 2022 (May 31, 2022 through July 18, 2022), or 2023 (May 30, 2023 through July 18, 2023). *See* Settlement at § I.E.

## III.   SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS

The Parties' Settlement provides for significant monetary recovery on behalf of the Class, and releases for the Class only those claims arising out of the facts, circumstances and occurrences alleged in the Complaint. *See* Settlement at §§ III.E.2 and 3. Further, the Settlement sets forth the legally appropriate mechanism for providing notice to the Class of the terms and conditions of the Settlement. *Id.* at §§ III.D.2-4.

### A.   The Recovery.

The Parties have come to a settlement in this action for a total maximum settlement amount of $5,650,000.00 to be paid to class members on a claims-made basis. The Settlement Amount is reversionary, meaning that any unclaimed amounts will be returned to Defendants.

All of the terms of the Settlement have been agreed upon as follows:

---

[7] Defendants do not concede that class or collective certification is appropriate in this action, but Defendants do not oppose certification of the Settlement Classes for settlement purposes consistent with the Parties' Settlement Agreement. *See* Settlement at §§ III.G.1.

- Approximately \$3,704,166.67 in estimated settlement funds to the Class;[8]
- Approximately \$30,000.00 in Settlement Administrator's reasonable fees and expenses approved by the Court;
- \$15,000.00 each as Enhancement Awards to Plaintiff Leann Mercer and Proposed Plaintiffs Jocelyn Lewis and Mike Brady as Class Representatives;[9]
- \$1,853,333.33 in attorneys' fees;[10] and
- \$17,500.00 in costs.

*See* Exhibit 1, "Settlement" at §§ III.B.1-4; Hendrickson Dec. at ¶ 3. Subject to Court approval, Defendants agree to pay a Maximum Settlement Amount of up to \$5,650,000.00 to cover all payments arising out of this Settlement. *See* Settlement at § I.R. Settlement Class Members who submit a timely and valid Claim Form shall be eligible to recover a Settlement Share of the Net Settlement Amount, in accordance with a plan of allocation based primarily on the number of overtime hours worked by Class Members, with an additional amount allocated for training time worked by Class Members. *Id.* at §§ III.B.4-6.

The Settlement provides that 25% of each payment to a Class Member shall constitute payment of wage claims such that they shall be subject to tax withholding and reported on an IRS W-2 Form, and 75% of each payment to a Class Member will be allocated to settlement of claims for non-wage income and constitute remuneration for damages separate and distinct from lost wages which shall not be subject to tax withholding and will be reported on an IRS 1099 Form, if required. *Id.* at § III.B.5. The Settlement Administrator shall be responsible for issuing appropriate tax forms, if any, to Approved Claimants, consistent with the Settlement Agreement. *Id.* Each Approved Claimant assumes full responsibility and liability for any employee taxes owed on their settlement payment. *Id.*

**B.    The Release.**

The Settlement provides that, in exchange for the good and valuable consideration set forth therein, all Participating Class Members shall waive any and all wage-and-hour claims,

[8] *See* fn, 3, above.
[9] *See* fn, 4, above.
[10] *See* fn, 5, above.

rights, demands, liabilities and causes of action of every nature and description that are alleged or could have been alleged in the Action, whether known or unknown, against Defendants and the Released Parties based on the facts alleged in the Action. *Id.* at §§ III.E.2 and 3. Named Plaintiff Mercer and Proposed Plaintiffs Lewis and Brady shall waive any and all claims against Defendants as of the date of the order granting preliminary approval of the settlement. *Id.* at III.E.1.

**C.     The Settlement Mechanism.**

The Parties have agreed to use a third-party Settlement Administrator, ILYM Group, Inc., to administer the claims process. *Id.* at § III.C, generally. The Settlement provides for the Settlement Administrator to send out notice explaining the terms and conditions of the Settlement to all Class Members. *Id.* and §§ III.D.2. A copy of the Notice to be approved by the Court and sent to class members is attached as Exhibit A to the Settlement. A copy of the Claim Form to be approved by the Court and sent to class members is attached as Exhibit B to the Settlement. To request exclusion from the Settlement, a Class Member must Opt-Out of the Settlement by submitting a written request electing to exclude himself or herself from the Settlement as set forth in the Settlement Agreement and in the Notice. *Id.* at § III.D.4.b.  Following mailing of the Notice, class members then have thirty (30) days to submit a claim form and participate in the Settlement, request to be excluded from the Settlement, or comment on or object to the Settlement. *Id.* §§ III.D.3, 4.a-b.

The Settlement further provides that following the notice period the Court will hold a final "fairness" hearing to provide final review and approval of the Settlement. *Id.* at § III.D.7.a. The Notice advises class members about the fairness hearing and their opportunity to attend the hearing and make their views known. *Id.,* Exhibit A, Notice.  At the fairness hearing, the Parties will address any issues raised by class members or the notice process itself, and the Court will have a second opportunity to review the settlement in full.

The Parties agree that, as a Rule 23 class action, this matter is subject to the notice requirements set forth in the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715(b). Accordingly, pursuant to 28 U.S.C. § 1715(b), not later than ten (10) days after filing the instant

Motion Defendants shall serve, upon the appropriate State official of each State in which a class member resides, and the appropriate Federal official, a notice of the Settlement consistent with the requirements enumerated by 28 U.S.C. § 1715(b)(1)-(8). Furthermore, pursuant to 28 U.S.C. § 1715(d) the Court may not issue an order granting final approval of the Settlement earlier than ninety (90) days after service of the notice of Settlement upon the appropriate State and Federal official. Thus, the Parties respectfully request that the Court refrain from issuing its order granting final approval of the Settlement until 100 days after the filing of this Motion.

## IV.   THE LEGAL FRAMEWORK WEIGHS IN FAVOR OF GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT.

FRCP 23(e) provides that settlement of the claims of a certified class is subject to the court's approval. In general, settlement of class actions is favored as a matter of "strong judicial policy." *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)).

Procedurally, the reviewing court's evaluation is conducted in two stages. *Alberto,* 252 F.R.D. at 658. At the first stage, the court conditionally certifies a class for settlement purposes, preliminarily approves the settlement pending the "fairness hearing," and authorizes notice of the proposed class settlement to be given to the class. *Id.* (citations omitted); *see also Manual for Complex Litigation (Fourth)* § 21.632 (2004) *(*"Manual for Complex Litigation"*)* (summarizing "preliminary fairness review"). Stage two is the fairness hearing, which is set for a time after notice has been provided to the class and class members have had an opportunity to submit claims, comments, or objections to the proposed settlement or to opt out of it, and the court reaches a final determination about whether the proposed settlement should be approved as a fair, adequate, and reasonable resolution of the dispute. *Id.* at 659 (citations omitted).

Here, because the Parties' Joint Motion initiates the first stage of the Court's evaluation of the Settlement, Plaintiffs submit that: (A) the Class should be certified; (B) the Settlement should be preliminary deemed fair, reasonable, and adequate; and (C) notice should be sent out as set forth in the Settlement.

1

**A.     The Proposed Settlement Class.**

Pursuant to the Settlement, the Parties seek to certify the following class for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure and the FLSA:

> <u>Settlement Class</u>: Plaintiff and the approximately 1,975 non-exempt hourly employees who worked for Defendants or other Released Parties as poker dealers in a Covered Position at the WSOP, occurring annually in Paradise, Nevada in 2021 (September 30, 2021 through November 23, 2021), 2022 (May 31, 2022 through July 18, 2022), or 2023 (May 30, 2023 through July 18, 2023). *See* Settlement at § I.E.

**B.     The Proposed Settlement Should be Preliminarily Approved.**

In the Ninth Circuit, settlements of complex class action lawsuits are strongly favored. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Speed Shore Corp., v. Denda,* 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation."). It is within the broad discretion of the trial court to approve a class action settlement. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The approval of a class action settlement takes place in two stages: preliminary approval and final approval. *West v. Circle K Stores, Inc.,* No. 04-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006). Preliminary approval of a class action settlement and notice to the class is appropriate if proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. FRCP 23(e)(2); *Bellinghausen v. Tractor Supply Co.,* 303 F.R.D. 611, 619 (N.D. Cal. 2014) (citing *Cruz v. Sky Chefs, Inc.,* No. C-12-02705 DMR, 2014 WL 2089938, at *7 (N.D. Cal. May 19, 2014) (quoting *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of the notice of the certification, proposed settlement, and date of the final fairness hearing." *See*

*In Re M.L. Stern Overtime Litigation*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864 at *3 (S.D. Cal. April 13, 2009) (quoting Manual on Complex Litigation Fourth § 21.632 (2004)). During the preliminary process, the Court simply determines "whether there is any reason to notify the class members of the proposed class settlement and to proceed with the fairness hearing." *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). The Court's review is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. If there are no obvious deficiencies, and the settlement falls into the range of possible approval, it should be preliminarily approved. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1057 (9th Cir. 2008); *Alaniz v. California Processing, Inc.,* 73 F.R.D. 269, 273 (C.D. Cal. 1976).

In this matter, an expeditious decision on the papers would promote a fair, effective, and efficient administration of Notice and is in line with the past practice of this Court. While a hearing is required for final approval of a potential Settlement, no such hearing is required at the earlier preliminary approval stage. *See, e.g., Nelson v. Wal-Mart Associates, Inc.*, Case No. 3:21-cv-00066-MMD-CLB (August 15, 2023 Order Granting Motion for Preliminary Approval of Class and Collective Action Settlement) *and DeWeese v. ITS National, LLC*, Case No. 3:18-cv-00375-MMD-WGC (March 20, 2019 Order Granting Preliminary Approval of Class Action Settlement) (attached to the Hendrickson Dec. as Exhibits 2 and 3, respectively). As set forth below, the proposed Settlement satisfies the standard for preliminary approval.

### 1. The Settlement Falls Within the Range of Possible Approval Given the Strengths and Weaknesses of the Claims and Defenses.

To grant preliminary approval, this Court must decide that the Settlement falls within the approved range for preliminary approval. *Zepeda*, 2015 WL 6746913, at *4; *Fraley*, 2012 WL 5838198, at *1 n.1; *Tableware*, 484 F. Supp. 2d at 1079. To determine whether a settlement "falls within the range of possible approval," courts consider "substantive fairness and adequacy" and "plaintiffs' expected recovery balanced against the value of the settlement[.]" *Tableware*, 484

F.Supp.2d at 1080. In making a determination of whether the Settlement is adequate and reasonable, the Court must ultimately balance the following factors: "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel ..." *Hanlon,* 150 F.3d at 1026.

Here, the Settlement represents a significant recovery on behalf of the Class given the risks associated with this case. *See* Hendrickson Dec. at ¶¶ 11, 12. Class Counsel represents that they have conducted a thorough investigation into the facts of this case and have diligently pursued an investigation of the claims against Defendants, including, but not limited to: (i) speaking with numerous opt-in plaintiffs and putative class members; (ii) reviewing relevant documents; (iii) analyzing time and pay data provided by Defendants for all putative class members; (iv) researching the applicable law and the potential defenses; (v) developing the arguments for class and conditional certification and other significant issues; and (vi) advocating for the rights of the putative class and collective. *Id.* Based on their own independent investigation and evaluation, Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interest of the Settlement Class Members in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by Defendants, trial risk, and appellate risk. *Id.*

Defendants deny any liability or wrongdoing of any kind associated with the claims alleged and contend that, but for the Settlement, this Litigation is not appropriate for class or collective certification pursuant to the FLSA, FRCP 23, or any other federal or state rule, statute, law, or provision. *See* Settlement at § III.G.1.a. Defendants continue to assert that the Litigation fails to meet the prerequisites necessary for class or collective action treatment under applicable law. *Id.* Defendants further assert that they have complied with all applicable provisions of federal or state statutory and common law. *Id.* Defendants further state that, despite their good-faith belief that they are not liable for any of the alleged claims, and despite their good-faith belief that certification is not appropriate, Defendants will not oppose the District Court's certification

of the Settlement Class contemplated by this Agreement solely for purposes of effectuating this Settlement. *Id.* Other than for purposes of this Settlement, Defendants do not waive their objections to certification of the Settlement Class, or any other class, in this Litigation.

Thus, the Settlement represents a compromise between experienced counsel for Plaintiffs and Defendants based upon each Party's honest assessment of the legal and factual strengths and weaknesses of their respective position. *See* Hendrickson Dec. at ¶ 11, 12, 17; *see also,* Paek Dec. at ¶¶ 9-11.

## 2.      All four criteria of FRCP 23(a) are met.

***FRCP 23(a)(1): The class is so numerous that joinder of all members is impracticable.*** "As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *Quintero v. Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (citation omitted). Here, the settlement Class consists of approximately 1,975 individuals. *See* Hendrickson Dec. at ¶ 11. Plainly, the numerosity criterion is satisfied.

***FRCP 23(a)(2): There are questions of law or fact common to the Class.*** The commonality requirement is construed liberally. *Alberto v. GMRI, Inc.*, 252 F.R.D. at 660 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (Rule 23(a)(2) construed "permissively"). The class members' claims must share some substantial issues of law or fact but need not be identical. *Quintero*, 2008 U.S. Dist. LEXIS 84976, at *8. Either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" satisfies this criterion. *Hanlon,* 150 F.3d at 1019.

Plaintiffs and Class Members assert common factual and legal questions, which include whether Class Members were compensated for all overtime hours worked at the appropriate legal rate pursuant to state and federal law and whether class members who are former employees were paid all their wages due and owing at the time of their termination. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp.2d 1053, 1062-63 (N.D. Cal. 2007); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 607 (C.D. Cal. 2005). Based on these common issues,

this criterion is met. For purposes of approving this Settlement only, Defendants do not oppose Plaintiffs' assertion that sufficient commonality exists.

**FRCP 23(a)(3): The claims or defenses of the representative parties are typical of the claims or defenses of the class.** Like commonality, the typicality standard is applied "permissive[ly]." *See Staton,* 327 F.3d at 957 (quoting *Hanlon,* 150 F.3d at 1020). It is satisfied if the representatives' claims are "'reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Id.*

Here, the claims or defenses of class representative Plaintiff Leann Mercer and Proposed Plaintiffs Jocelyn Lewis and Mike Brady are typical of the claims or defenses of the class because all Class Members were classified as non-exempt hourly paid employees who worked for Defendants or other Released Parties as poker dealers in a Covered Position at the WSOP, occurring annually in Paradise, Nevada in 2021 (September 30, 2021 through November 23, 2021), 2022 (May 31, 2022 through July 18, 2022), or 2023 (May 30, 2023 through July 18, 2023). *See* Settlement at § I.E. Accordingly, Named Plaintiff and the Class Representative Leann Mercer has asserted the same alleged wage and hour violations as all other members of the Class. Thus, her claims are typical to those of the Class.

**FRCP 23(a)(4): The representative parties will fairly and adequately protect the interests of the class.** Courts have interpreted this requirement as posing two questions: (1) whether either the named plaintiffs or their counsel has any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. *See id.* (*citing Hanlon* and other cases). Here, the current and Proposed Plaintiffs and Class Representatives share with absent Class Members an interest in recovering compensation that Defendants allegedly denied them due to Defendants' alleged failure to include all overtime hours worked at the appropriate legal rate pursuant to state and federal law. And Plaintiffs' counsel has extensive experience in wage and hour class actions, as well as class action litigation more generally, and the proposed settlement was reached only after arm's-length direct settlement discussions. *See* Hendrickson Dec., at ¶¶ 2, 7, 12.

**3.    The criteria of FRCP 23(b)(3) are met.**

To certify a class under FRCP 23(b)(3), a court must find that common questions of fact or law predominate over questions affecting only individual members of the proposed class, and that a class action is the superior method for fairly and efficiently adjudicating the controversy. FRCP 23(b)(3).

*The predominance requirement is met*. The predominance inquiry "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir), *cert. denied,* 534 U.S. 973,122 S. Ct. 395 (2001) ("*Local Joint Executive Bd.*") (quoting *Hanlon,* 150 F.3d at 1022).

As in numerous other wage and hour class actions, the fact that this litigation arises from Defendants' alleged uniform policies strongly supports a finding that common issues of law and fact predominate such that this requirement is satisfied. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 527 F. Supp.2d at 1068; *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 958 (C.A.9 2009).

*The superiority requirement is met.* Determining whether a class action is the superior method of adjudicating a controversy involves "comparing alternative mechanisms of dispute resolution" as applied to the facts and claims. *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. at 614. The Parties submit that the situation here is comparable to that of the Las Vegas Sands' former casino employees who sought damages for failure to provide a statutorily required 60-day notice before closure:

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class members would recover about $1,330. If plaintiffs cannot proceed as a class, some - perhaps most - will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

*Local Joint Executive Bd.,* 244 F.3d at 1163 ("Class actions … may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (*citing Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809, (1985). In such a situation, the superiority requirement is "easily satisfied." *Id.* Because the sums per employee are relatively small, the Plaintiffs' litigation costs high, and Defendants' alleged conduct uniform, a class action is superior to filing nearly two-thousand individual actions concerning the same facts and legal issues.

### C.     The Proposed Settlement Is Fair, Reasonable, and Adequate.

The *Manual for Complex Litigation* § 21.62 identifies several factors that courts may weigh in determining whether a settlement is fair, reasonable, and adequate (FRCP 23(e)(2)), summarizing the inquiry as follows: Fairness calls for a comparative analysis of the treatment of class members vis-a-vis each other and vis-a-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process. *Id.,* § 21.62 at 315.

At the preliminary approval stage, courts do not make a final determination of fairness, reasonableness, and adequacy. Instead, the key question at this point is only whether the settlement is "potentially fair, as the Court will make a final determination of [the settlement's] adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Equifax Info. Servs. LLC,* 243 F.R.D. 377,386 (C.D. Cal. 2007). Thus, the inquiry should focus on whether the proposed settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to class members informing them about the proposed settlement and their options for responding and participating. *Molski v. Gleich,* 318 F.3d 937,944 (9th Cir. 2003); *see also Manual for Complex Litigation* § 21.632. "Once the judge is satisfied as to the ... results of the initial inquiry into the [1] fairness, [2] reasonableness and [3] adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing. *Id.,* § 21.633 at 321. The Parties submit that all inquiries are preliminarily satisfied as follows:

1

### 1.     The Settlement Is Fair.

2    **Fairness of distribution among Class Members.** A plan of distribution that

3 compensates class members based on the type and extent of their injuries is generally considered

4 reasonable. *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183, at *8

5 (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class members by awarding a pro rata

6 share' to the class members based on the extent of their injuries.") (Internal citation omitted.).

7 Here, all Class Members will receive a proportionate share of the Settlement fund primarily based

8 upon the total number of overtime hours that they worked for Defendants, with an additional

9 amount allocated for training time worked by Class Members. Since most Class Members earned

10 the same amount in hourly base pay, and since the  Down Rate payments that allegedly should

11 have been included in the regular rate for purposes of calculating overtime premiums were

12 likewise tied to hours worked, the Settlement's proposed plan of allocation based primarily on

13 the amount of overtime hours worked, while also taking into account allegedly unpaid training

14 time worked by Class members, equitably bases the distribution of Settlement funds on the type

15 and extent of damages actually suffered by Class Members. *See* Settlement at § III.B.4-6.

16    **Fairness of proposed attorneys' fees.** The allocation of total settlement funds between

17 Class Members and Class Counsel is also fair, in that the Settlement provides for Plaintiff's

18 counsel to seek an amount that is less than one-third of the Maximum Settlement Amount in fees.

19 *See* Hendrickson Dec. at ¶ 10. The requested fees are fair compensation for undertaking complex,

20 risky, expensive, and time-consuming litigation solely on a contingency basis. Plaintiff's

21 attorney-fee agreement provides that Class Counsel can seek up to 35% of the common fund but

22 Class Counsel is actually requesting less than the available amount under the attorney-fee

23 agreement. *Id.* Further, the requests are in line with other attorneys' fees awards for wage and

24 hour class actions, particularly given that each Class Member here will be entitled to receive a

25 substantial claim payment, with a currently expected average recovery of approximately

26 $1,875.53 after accounting for all anticipated fees, costs, and enhancements requested herein.

27 Indeed, courts have recognized that an appropriate method for awarding attorneys' fees in class

28 action is to award a percentage of the "common fund" created as a result of the settlement.

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of the common fund/percentage approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Id.*

Moreover, several courts have expressed frustration with the alternative "lodestar" approach for deciding fee awards, which usually involves wading through voluminous and often indecipherable time records. Commenting on the loadstar approach, Chief Judge Marilyn Hall Patel wrote in *In re Activision Securities Litigation,* 723 F.Supp. 1373, 1375 (N.D. Cal. 1989): This court is compelled to ask, "Is this process necessary?" Under a cost-benefit analysis, the answer would be a resounding, "No!" Not only does the *Lindy Kerr-Johnson* analysis consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be in the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fees petition. Or class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement.  Indeed, the percentage approach is preferable to the lodestar because: (1) it aligns the interests of class counsel and absent class members; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources. *In re Activision Securities Litigation*, 723 F. Supp. at 1378-79.

Courts now routinely use the percentage of the common fund approach to determine the award of attorneys' fees. (*See, e.g., In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378-79 (9th Cir. 1994) (approving attorneys' fees of one-third of settlement fund). Class Counsel's application for less than one-third of the Settlement Funds in this case is within the range of reasonableness. Historically, courts have awarded percentage fees in the range of 20% to 50% of the common fund, depending on the circumstances of the case. *Newberg on Class Action* § 14:6 (4th ed. 2008); *see also In re Activision Securities Litigation*, 723 F.Supp. 1373, 1378 (N.D. Cal. 1989). According to *Newberg*: "No general rule can be articulated on what is a reasonable percentage of a common fund. Usually, 50% of the fund is the upper limit on a

reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." *Newberg*, § 14:6. Accordingly, the attorneys' fees sought in this case are fair and reasonable.

**Fairness of proposed "enhancement" awards for Named Plaintiff Mercer and Proposed  Plaintiffs Lewis and Brady**. The principle of fairness is also well-served by the enhancement awards proposed for the current and Proposed  Plaintiffs. The current and Proposed Plaintiffs provided invaluable assistance to their counsel in explaining Defendants' alleged compensation policies and procedures and in providing information to assist in the settlement negotiations. *See* Declaration of Leann Mercer at ¶ 8; Declaration of Jocelyn Lewis at ¶ 5; Declaration of Mike Brady at ¶ 5. Further, Plaintiffs incurred personal risk in bringing this lawsuit on behalf of the other persons in the Class. *See, e.g., Koehl v. Verio,* 142 Cal. App. 4th 1313, 1328 (2006) (in wage and hour action where the defendant prevailed at trial, the named plaintiffs were held liable, jointly and severally, for the defendant's attorneys' fees). Moreover, Plaintiffs could have been held liable for Defendants' costs if they were ultimately unsuccessful in resolving the case. In recognition of these risks as well as the time-consuming and valuable role that class representatives play in class action litigation, service payments are recognized as serving an important function in promoting class action settlements. In *League of Martin v. City of Milwaukee,* 588 F. Supp. 1004 (E.D. Wis. 1984), the court held that the proposed settlement properly granted the named plaintiff additional relief, explaining that it is "not uncommon for class ... members to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit. *Id.* at 1024. Accordingly, the proposed enhancement payments are fair.

### 2.     The Settlement Is Reasonable.

At $5,650,000.00, the proposed Settlement is reasonable. This is not a settlement where the aggregate figure is large simply because the size of the class is in the tens or hundreds of thousands. Instead, the Class size in this case is relatively small in comparison, and Settlement Class Members are eligible for substantial individual financial benefits. These considerations

indicate that the proposed settlement falls within the range of reasonableness, warranting preliminary approval.

This conclusion is reinforced by considering such factors as the risk that a Class might not be certified pursuant to FRCP 23, decertified pursuant to the FLSA, or might be significantly smaller than proposed, and the time, expense, and complexity of the litigation, including the possibility of additional appellate proceedings. Of particular relevance to the reasonableness of the proposed Settlement are the numerous potentially dispositive defenses advanced by Defendants including, among other things, the arguments that the claims are individualized and, therefore, not susceptible to class or collective treatment; that all Class Members fall within state and federal exemptions from overtime requirements; and the applicability of penalties for the alleged violations. Given the significant legal and factual uncertainty relating to these defenses, the $5,650,000.00 Settlement represents a reasonable recovery based on the alleged violations. *See* Hendrickson Dec. at ¶¶ 11-12; *see also,* Paek Dec. at ¶¶ 9-11.

Furthermore, while Class Counsel believe that Plaintiffs' claims are meritorious, they are experienced class action litigators and understand that the outcome of class certification, trial, and any attendant appeals are inherently uncertain, as well as likely to consume many months or years. *Id.* Having reviewed relevant compensation data and employment information, counsel for the Parties—all experienced class action litigators well versed in wage and hour law—arrived at a reasonable resolution through a protracted arm's-length direct negotiation process, which continued through the negotiation of all details of the Settlement agreement and ancillary documents. *Id.*

Another factor considered in approving a settlement is the complexity, expense, and likely duration of the litigation. *Offices for Justice,* 688 F.2d at 625. The Court must weigh the benefits of the proposed settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *See, e.g., Young v. Katz,* 447 F .2d 431,433-34 (5th Cir. 1971). Employment cases, and specifically wage and hour cases, are expensive and time consuming. That this is a class action further amplifies the economies of time, effort, and expense achieved by the Settlement. Inevitably, the certification process alone would add time and

expense to the litigation process. The Settlement, on the other hand, provides Class Members substantial, prompt and efficient relief. The Settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *see also 4 Newberg on Class Actions* § 11.41 (citing cases).

Here, the Settlement represents a compromise between experienced counsel for Plaintiffs and Defendants based upon each Party's honest assessment of the legal and factual strengths and weaknesses of their respective position. After accounting for all anticipated fees, costs, and enhancements requested herein, each Class Member who submits a Claim is currently expected to receive an average amount of approximately $1,875.52 from the estimated Net Settlement Amount. This amount represents a significant financial benefit which falls within the range of reasonableness, warranting preliminary approval. This conclusion is reinforced by considering such factors as the risk that a class might not be certified or might be significantly smaller than proposed; and the time, expense, and complexity of the litigation. Defendants assert they timely paid the Class Members all wages and overtime at the correct rate, that various overtime exemptions apply to the WSOP Dealers, and that penalties are not applicable to the alleged violations. Defendants further assert that the matter is not appropriate for class or collective treatment. The claims and defenses at issue in this case would likely result in protracted litigation, extensive class-wide discovery, and a likelihood of appellate proceedings. Ultimately, there were significant remaining risks for both Parties, and the Parties' Settlement represents an adequate and reasonable compromise that falls within the range necessary to support preliminary approval and notification to members of the potential Class for their consideration and response. *See* Hendrickson Dec. at ¶¶ 11-12; *see also,* Paek Dec. at ¶¶ 9-11.

### 3.   The Settlement Is Adequate.

As previously mentioned, in a somewhat similar class action the court aptly observed that it would have been irrational for most, and probably all, class members to pursue their claims on an individual basis "because of the disparity between their litigation costs and what they hope to recover." *Local Joint Executive Bd.*, 244 F.3d at 1163.

The recovery provided through the Settlement is reasonable, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes.... Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation...." *Officers for Justice,* 688 F.2d at 634 (citation omitted). Accordingly, a settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska P'ship,* 151 F .3d 1234, 1242 (9th Cir. 1998). An additional consideration is that a settlement provides for payment to the class now, rather than a payment many years down the road, if ever. *See City of Detroit v. Grinnell Corp.,* 495 F .2d 448, 463 (2d Cir. 1974).

Here, considering the present value of the Settlement sum, the probability of lengthy litigation in the absence of a settlement, and the risks that the Class might not have prevailed at trial, it is no exaggeration to predict that without using the class action process, the relief that members of the Class were likely to achieve individually ranged from negligible to zero. Consequently, the $5,650,000.00 Settlement satisfies the criterion of adequacy. *See Manual for Complex Litigation* § 21.62 ("Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.").

### D.     The Notice Adequately Informs Class Members of the Settlement.

The Notice explains the claim process; how to request to be excluded or object; and the consequences of the action the Class Member takes (filing a claim, doing nothing, opting out, or objecting), in terms of both financial benefit and release of state claims. *See* Exhibit A, Notice. The Notice advises Class Members about the final approval hearing, their rights with respect to that hearing, and how to get more information. *Id.* Likewise, the Claim Form and exclusion process are simple and straightforward. *See* Claim Form and Consent to Join attached as Exhibit B to the Settlement Agreement; *see also*, Settlement Agreement at § III(D)(4) (opt-out procedure). The 30-day time frame for returning a claim is reasonable, allowing Class Members to digest the information in the notice and obtain answers to questions before deciding on the

action they want to take. Accordingly, in addition to approving the Settlement agreement as a whole, the Parties respectfully ask that the Court approve the Notice and other ancillary forms in substantially the format presented with the Settlement.

As discussed in Section III(C), *supra*, the Parties will also comply with the separate CAFA notice requirements of 28 U.S.C. § 1715(b)(1)-(8), including service of notice of the Settlement upon the appropriate State official of each State in which a class member resides, and the appropriate Federal official, not later than ten (10) business days after filing the instant Motion. Thus, the Parties will provide adequate notice to both the pertinent State and Federal officials in a manner that provides opportunity to State and Federal officials to review the Settlement's terms and conditions and furthers the purpose of CAFA. *See, California v. IntelliGender, LLC,* 771 F.3d 1169, 1172-1173 (9th Cir. 2014) (discussing purpose of CAFA notice requirements is to give states a role in ensuring equitable class action settlements).

**E.    Approval and Appointment of ILYM Group, Inc. as Settlement Administrator.**

ILYM Group, Inc. should be appointed as the Settlement Administrator in this case and instructed to carry out the terms of the Settlement. ILYM has committed to effectuate the administration of the Settlement within the costs allocated under the Settlement. Accordingly, ILYM should be appointed as Settlement Administrator and their fees and costs of $30,000 should be preliminarily approved.

**V.    CONCLUSION**

Based on the information and reasons provided above, the Parties respectfully request that the Court enter the proposed order granting preliminary approval of the class action Settlement attached hereto.

Dated: March 27, 2024.

By:   */s/ Joshua R. Hendrickson*
       Joshua R. Hendrickson
       HENDRICKSON LAW GROUP, PLLC

       Mark R. Thierman
       Joshua D. Buck
       Leah L. Jones
       THIERMAN BUCK, LLP

*Attorneys for Plaintiff and all others
similarly situated.*


By:   */s/ Amy L. Thompson*
       Montgomery Y. Paek
       Amy L. Thompson
       Michael D. Dissinger
       LITTLER MENDELSON, P.C.

*Attorneys for Defendants*

JOINT MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT