Joshua R. Hendrickson, Nev. Bar. No. 12225
josh@hendricksonlawgroup.com
HENDRICKSON LAW GROUP, PLLC
325 W Liberty St
Reno, Nevada 89501
Tel. (775) 502-8332

Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
THIERMAN BUCK LLP
325 W Liberty St
Reno, Nevada 89501
Tel. (775) 284-1500
Fax. (775) 703-5027

*Attorneys for Plaintiffs and all others
similarly situated.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LEANN MERCER; JOCELYN LEWIS; and MIKE BRADY, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>    vs.<br><br>CAESARS ENTERTAINMENT, INC.; PARIS LAS VEGAS OPERATING CO., LLC; and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No.: 2:23-cv-00958-MMD-NJK<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE INCENTIVE PAYMENTS** |

///

///

///

COME NOW Plaintiffs Leann Mercer; Jocelyn Lewis; and Mike Brady, on behalf of themselves and all others similarly situated ("Plaintiffs"), by and through their attorneys of record, and hereby move this honorable Court pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Fair Labor Standards Act (FLSA) for an order:

(1) Entering final approval of the class and collective action settlement between Plaintiffs, Defendants Caesars Entertainment, Inc.; Paris Las Vegas Operating Co., LLC (hereinafter "Defendants" or "Caesars"), and unnamed Doe entities Parball Newco LLC and Rio Properties LLC (collectively, "Doe Defendants");

(2) Confirming final certification of the Rule 23 and 29 U.S.C. § 216(b) Class for purposes of settlement;

(3) Approving the Class Representative incentive payments;

(4) Approving Class Counsel's fees and costs; and

(5) Approving the costs of the Settlement Administrator.

This motion is based on the following Memorandum of Points and Authorities in support thereof, the Settlement Agreement[1] (the "Settlement Agreement" or "Agreement"), the Declarations filed in support of this Motion and all accompanying Exhibits, all other pleading papers and records on file herein, all matters upon which judicial notice may be taken, any oral argument that may be presented, and upon such other matters the Court deems just and necessary.

///
///
///
///
///

---

[1] The Settlement Agreement was filed as an Exhibit to the Declaration of Joshua R. Hendrickson in support of the Joint Motion for Preliminary Approval. *See* ECF No. 22-1, Ex. 1. This Unopposed Motion for Final Approval of Class and Collective Action Settlement, Attorneys' Fees and Costs, and Class Representative Incentive Payments ("Motion for Final Approval") incorporates by reference the definitions in the Settlement Agreement and terms used herein shall have the same meanings as set forth in the Agreement.

Dated: September 23, 2024                    Respectfully Submitted,

/s/Joshua R. Hendrickson
Joshua R. Hendrickson
HENDRICKSON LAW GROUP, PLLC

Mark R. Thierman
Joshua D. Buck
Leah L. Jones
THIERMAN BUCK, LLP

*Attorneys for Plaintiffs and all others
similarly situated.*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs seek final approval of this $5,650,000.00 class and collective action settlement (the "Settlement") pursuant to Rule 23 of the Federal Rules of Civil Procedure and the FLSA. Plaintiffs and Defendants (collectively "the Parties") have complied with all the terms of the Court's Order granting preliminary approval. *See* ECF No. 25. Settlement Notices were distributed to 1,972 putative class members by the Settlement Administrator, ILYM Group, Inc. ("ILYM"), pursuant to this Court's Order granting preliminary approval. *See* Declaration of Claims Administrator Nathalie Beltran ("Beltran Dec.") at ¶ 6. Ultimately, 949 class members submitted claims (48.12%) and only nine individuals submitted exclusion letters to opt-out of the settlement class (0.46%). One individual who opted out, Mark Drewes, also submitted an untimely letter purporting to assert objections to the settlement. As discussed more fully below, Mr. Drewes lacks standing to assert his objections because he is not a member of the settlement class—*i.e.,* he opted out of the Settlement. But, to the extent this Court considers the objections, his objections are untimely, appear to rest on a misunderstanding of the Settlement Agreement, and advance individualized concerns that are inapplicable to Mr. Drewes given that he has opted out of the Settlement Class. Mr. Drewes' sole objection (out of 1,972 class members) also represents less than one tenth of one percent of the total Settlement Class.

The Settlement is the product of a voluminous exchange of data and a lengthy negotiation process that resulted in the Parties accepting a proposal made by experienced wage-hour mediator Hunter Hughes. The Net Settlement Amount available for distribution to all class members is $3,718,427.44, which is based upon the Total Settlement Amount minus: (i) $17,791.47 for the Settlement Administrator's reasonable fees and expenses approved by the Court, (ii) $15,000.00 each as Enhancement Awards to Plaintiffs, Leann Mercer, Jocelyn Lewis and Mike Brady, as Class Representatives, (iii) $1,853,333.33 in attorneys' fees, and (iv) $15,447.76 in Class Counsel's out-of-pocket expenses. *See* Beltran Dec. at ¶ 18.

This is not a settlement where the aggregate figure is large simply because the size of the class is in the tens or hundreds of thousands. Instead, the Class size in this case is relatively small

in comparison, and Settlement Class Members are eligible for substantial individual financial benefits. Individual class member payments will be calculated as a proportionate share of the Net Settlement Amount primarily based upon the total number of overtime hours that they worked for Defendants, with an additional amount added to compensate Class Members for the training time claim. *See* Settlement at § III.B.4-6. To date, the 949 class members who submitted claims have claimed $2,546,927.35 (68.49%) of the Net Settlement Amount. The average estimated settlement amount for each class member who submitted a claim is $2,683.80, and the highest estimated payment is $14,813.53. *See* Beltran at ¶ 18. For all these reasons, and as set forth more fully below, Plaintiffs submit that the Settlement should be finally approved as a fair, adequate and reasonable resolution of the litigation.

## II.    BACKGROUND

A summary of the litigation, terms of the Settlement Agreement, and fairness and adequacy of the Settlement are set forth in the Joint Motion for Preliminary Approval and related Declarations (ECF No. 22), which Plaintiffs incorporate by reference.

### A.    The Settlement Class

The Court preliminarily certified the following class for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure ("Settlement Class") and FLSA:

> All non-exempt hourly employees who worked for Defendants or related entities as poker dealers at the World Series of Poker in Paradise, Nevada in 2021 (September 30, 2021 through November 23, 2021), 2022 (May 31, 2022 through July 18, 2022), and/or 2023 (May 30, 2023 through July 18, 2023).

Preliminary Approval Order at ¶ 3 (ECF No. 25). Following Notice, nine putative class members timely opted out of the Settlement Class. Accordingly, Plaintiffs now ask that this Settlement Class be certified through final approval, excluding the nine individuals who opted out.

### B.    The Settlement Consideration

The Settlement provides a Total Settlement Amount of $5,650,000.00. The Net Settlement Amount available for distribution to all class members is $3,718,427.44, which is based upon the Total Settlement Amount minus: (i) $17,791.47 in Settlement Administrator's reasonable fees and

expenses approved by the Court, (ii) $15,000.00 each as Enhancement Awards to Plaintiffs, Leann Mercer, Jocelyn Lewis and Mike Brady, as Class Representatives, (iii) $1,853,333.33 in attorneys' fees, (iv) $15,447.76 in Class Counsel's out-of-pocket expenses. *See* Beltran Dec. at ¶ 18.

### C.    Release of Claims

Once the Settlement is final and effective, the named Plaintiffs and settlement class members who have not opted-out will release federal and state law claims for damages against Defendants as set forth in the Settlement, which provides as follows:

1. **Plaintiffs**. As of the date of the preliminary approval of the Settlement, and in consideration of Plaintiffs' awarded Class Representative Payments, Plaintiffs' Settlement Payments, and the other terms and conditions of the Settlement, Plaintiffs Leann Mercer, Jocelyn Lewis, and Mike Brady hereby fully and finally release any and all claims against Defendants, separately and together, and any present and former parents, subsidiaries, and affiliated companies or entities, including, but not limited to, Caesars Entertainment, Inc., Paris Las Vegas Operating Co., LLC, Parball Newco LLC and Rio Properties LLC, and their respective officers, directors, employees, partners, shareholders, insurers and agents, and any other successors, assigns, and legal representatives of Defendants ("Released Parties"), known or unknown, that arise from or relate to their employment, including but not limited to all claims asserted in the Action and all claims that could have been asserted in the Action. This release does not include any workers' compensation claims.

2. **Released State Law Claims by Class Members**. As of the date of the preliminary approval of the Settlement, each Participating Class Member releases any and all wage-and-hour claims, rights, demands, liabilities and causes of action of every nature and description that are alleged or could have been alleged in the Action, whether known or unknown, against Defendants and the Released Parties based on the facts alleged in the Action. The Class's Released Claims include any and all claims for unpaid wages, untimely payment of wages, minimum wages, overtime compensation, or any other related allegation, including claims for breach of contract and claims for penalties, interest, and attorneys' fees and costs, whether founded on federal, state, or local law based on the facts that are alleged in the Action.

3. **Released FLSA Claims by Class Members**. In addition, each Class Member who submits a valid and timely Claim Form fully and finally releases and discharges Defendants and the Released Parties, upon final approval of this Settlement, from any and all federal

> wage-and-hour claims, rights, demands, liabilities, liquidated damages or penalties, and causes of action of every nature and description pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, whether known or unknown, against Defendants and Released Parties based on the facts that are alleged in the Action.

Settlement at §§ III.E.1-3.

### D.    The Notice Process

On April 11, 2024, ILYM Group received the Court approved text for the Notice Packet from Counsel for Plaintiff. ILYM Group prepared a draft of the formatted Notice Packet, which was approved by the Parties' Counsel prior to mailing. Pursuant to the Court's Order granting preliminary approval (ECF No. 25), the Class Notice advised Class Members of their right to opt out from the Settlement, object to the Settlement, or do nothing, and the implications of each such action. The Class Notice advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information. *See* Beltran Dec. at ¶ 4.

On April 8, 2024, ILYM Group received the class data file from Counsel for Defendants, which contained the name, social security number, last known mailing address, and the number of overtime hours for each Settlement Class Member. The data file was uploaded to ILYM Group's database and checked for duplicates and other possible discrepancies. The Class List contained 1,972 individuals. *Id.* at ¶ 5.

As part of the preparation for mailing, all 1,972 names and addresses contained in the Class List were then processed against the National Change of Address ("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of updating and confirming the mailing addresses of the Settlement Class Members before mailing of the Notice Packet. The NCOA contains requested change of addresses filed with the USPS. To the extent that an updated address was found in the NCOA database, the updated address was used for the mailing of the Notice Packet. Updated addresses were also received by Class Members and from Counsel. To the extent that no updated address was found in the NCOA database or otherwise

provided, the original address provided by Counsel for Defendants was used for the mailing of the Notice Packet. *Id.* at ¶ 6.

On August 2, 2024, the Notice Packet was mailed, via U.S First Class Mail, to all 1,972 individuals contained in the Class List. *Id.* at ¶ 7. A total of 93 Notice Packets were returned as undeliverable. For those individuals, ILYM Group performed a computerized skip trace on the 93 returned Notice Packets that did not have a forwarding address, in an effort to obtain an updated address for the purpose of re-mailing the Notice Packets. As a result of this skip trace, 60 updated addresses were obtained and the Notice Packets were promptly re-mailed to those Settlement Class Members, via U.S First Class Mail. *Id.* at ¶ 8. The remaining 33 Notice Packets were deemed undeliverable as no updated addresses were found notwithstanding the skip tracing. *Id.* at ¶ 10.

On August 16, 2024, ILYM Group notified the parties that the Notice Packets mailed to 300 of the 1,972 Class Members failed to include a pre-stamped self-addressed return envelope. *Id.* at ¶ 11. On August 19, 2024, ILYM Group mailed a Correction Letter to these 300 Class Members providing them with the omitted pre-stamped self-addressed return envelope. *Id.*

As of the date of Ms. Beltran's declaration, ILYM Group has received 949 valid claim forms, nine opt-out letters, and one objection from an individual who opted-out of the settlement class. No class members objected to the settlement. *Id.* at ¶¶ 12-13.

### E.    Settlement Allocation Plan

Individual class member payments will be calculated as a proportionate share of the Settlement fund primarily based upon the total number of overtime hours that they worked for Defendants, with an additional amount added to compensate Class Members for the training time claim. *See* Settlement at § III.B.4. Specifically, the Settlement Agreement provides that:

> The Settlement Share for each Claimant will be calculated and paid as follows: the total number of Class Members and total number of overtime hours worked by Class Members will be combined to determine the total number of Settlement Shares available for Participating Class Members (the "Maximum Settlement Share"). The total Net Settlement Amount will be divided by the Maximum Settlement Share, estimated at Three Million Seven Hundred Four Thousand One Hundred Sixty-Six and Sixty-Seven Cents ($3,704,166.67), to calculate the value of one Settlement Share ("One Share"). Each Claimant will be entitled to One Share,

regardless of overtime hours worked (the "Base Share"). Claimants who worked overtime hours shall be entitled to receive additional Settlement Shares based on the number of overtime hours worked by the Claimant. In addition to the Claimant's Base Share, each Claimant with overtime hours worked will be entitled to receive One Share for each overtime hour worked by the Claimant during a Covered Shift.

*Id.* Claimants were provided with an opportunity to dispute the number of qualifying overtime hours identified in the Class Notice by identifying and submitting the dispute within the Claim Form. *See*, *id.* at III.B.6 and Ex. B thereto, Claim Form, at p. 2. Seven class members disputed the number of qualifying overtime hours identified in their Notice. *See* Beltran Dec. at ¶ 14. Six of the seven class members who submitted disputes did not submit documentation substantiating their claims that they worked additional overtime hours or submitted documentation consistent with the original allocation of overtime hours worked as stated in the payroll records provided to ILYM by Defendants. One class member's dispute was accepted based on the documentation provided to ILYM. *Id.* at 14. To date, the nine class members who submitted claims have claimed $2,546,927.35 (68.49%) of the net settlement fund. The average estimated settlement amount for each class member who submitted a claim is $2,683.80, and the highest estimated payment is $14,813.53. *See* Beltran at ¶ 18.

**F.  Service Award/General Release Payment to Plaintiffs**

Plaintiffs detailed the work that they performed on behalf of the Class in Declarations submitted in support of the Joint Motion for Preliminary Approval of the Settlement (ECF No. 22), and Plaintiffs have continued to take their duties as class representatives seriously and have remained in contact with class members since preliminary approval was granted. *See* ECF Nos. 22-4, 22-5, and 22-6.

**G.  Class Counsel Fees and Costs**

The Settlement Agreement provides for Plaintiffs' counsel to seek $1,853,333.33 in attorneys' fees, which is less than one-third of the Maximum Settlement Amount. *See* Declaration of Joshua R. Hendrickson in support of Unopposed Motion for Final Approval ("Hendrickson Dec.") at ¶ 13. For the reasons set forth in the Joint Motion for Preliminary Approval (ECF No.

22), and as further addressed here, the requested amount of attorneys' fees represents fair and reasonable compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis. *See* ECF No. 22, pp. 18-20.

### H.    Claims Administrator Fees

Settlement Administrator ILYM Group has completed its duties as the Settlement Administrator in this case pursuant to the Court's Order granting preliminary approval (ECF No. 25). ILYM Group's total costs for services in connection with the administration of this Settlement, including fees incurred and anticipated future costs for completion of the administration, is $17,791.47, which is significantly less than the $30,000.00 estimate approved by this Court in its Order granting preliminary approval. *See* Beltran Dec. at ¶ 19.

## III.    ARGUMENT

Three steps must be satisfied for final approval of the Settlement Agreement. First, the Court must finally certify the Settlement Class. Second, the Court must find that the Settlement Class Members received adequate notice under Federal Rule of Civil Procedure 23(c)(2)(B). Third, the Court must decide whether the Settlement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (discussing Rule 23(e)(2) standard). These requirements are all met here.

### A.  The Settlement Classes Should be Finally Certified.

In the Preliminary Approval Order, this Court conditionally certified the Settlement Class under Rule 23 of the Federal Rules of Civil Procedure and the FLSA. *See* ECF No. 25. The same analysis applies here, so the class should be finally certified for settlement purposes under Rule 23(e) for the same reasons set forth in Plaintiffs' motion for preliminary approval of the Settlement. *See* ECF No. 22, at pp. 14-17.

### B.  Rule 23(c)'s Notice Requirements Have Been Met.

A class action certified under Rule 23(b)(3) must satisfy the Rule 23(c)(2) notice provisions, and upon settlement, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(l). Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of

particular information. Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

This Court approved the Notice and the Notice Plan in its Preliminary Approval Order. *See* ECF No. 25. As described in Section II above, ILYM Group implemented the Notice Plan. Over 98% of the Class Members (1,939 of 1,972) received the Notice, (*see* Beltran Dec. at ¶¶ 7-10), which far exceeds the constitutional requirement for notice. The Notice itself also exceeded the constitutional requirements to inform Class Members about the Settlement, in general, and the amount of Settlement funds that were personalized for each Class Member. The Notice informed Class Members of the nature of the action, the terms of the proposed settlements, the effect of the action and the release of claims, as well as class members' right to exclude themselves from the action and their right to object to the proposed settlements. This Notice complies with all of the requirements of Rule 23.

## C. Final Approval of the Settlement Should be Granted: The Settlement is Fair, Adequate and Reasonable.

The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge," who "is exposed to the litigants and their strategies, positions, and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). But the "court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Rodriguez v. West Pub. Co.*, 563 F.3d 948, 965 (9th Cir. 2009) (citation and internal quotation marks omitted).

In the Ninth Circuit, "voluntary conciliation and settlement are the preferred means of dispute resolution," which is "especially true in complex class action litigation." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (internal quotation marks and citation omitted). There "is an overriding public interest in settling and quieting litigation," which is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). A "presumption in favor of voluntary settlement agreements" exists, and "this presumption is

especially strong in class actions and other complex cases … because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) (internal citation and quotation marks omitted).

In determining whether a settlement agreement is fair, adequate, and reasonable, the Court must weigh some or all of the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also, Churchill Village, LLC v. General Electric,* 361 F.3d 566, 575 (9th Cir. 2004) (enumerating factors to be weighed in determining whether class settlement is fair, adequate and reasonable); *Rodriguez, supra,* 563 F.3d at 963 (same). All of these factors support final approval of the Settlement.

1.    The strength of Plaintiffs' case supports final approval.

In assessing the strength of Plaintiffs' case, the Court should not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615 at 625 (9th Cir. 1982). Instead, the Court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). The Court's assessment of the likelihood of success is "nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625 (internal citations omitted).

Plaintiffs allege five causes of action: (1) Failure to Pay Overtime in Violation of 29 U.S.C. § 207, *et al.*; (2) Failure to Pay Minimum Wages in Violation of the Nevada Constitution and § NRS 608.250; (3) Failure to Compensate for All Hours Worked in Violation of NRS

608.016 and 608.140; (4) Failure to Pay Overtime in Violation of NRS § 608.018 and NRS § 608.140; and (5) Failure to Pay Wages Due and Owing in Violation of NRS 608.020-.050 and NRS 608.140. (ECF No. 1-3.) Plaintiffs' allegations arise from Defendants' policies and practices of allegedly failing to include non-discretionary payments in overtime calculations and allegedly failing to pay for time worked attending required training sessions. *Id.* Defendants deny these allegations in their entirety and deny all liability. Defendants contend that a class or collective action could not properly be certified in this action if it were litigated rather than settled, that the putative class members were properly paid all wages under federal and state law, that Defendants did not violate the FLSA or Nevada Statutes, and that Defendants are not liable for any of the penalties claimed in the Complaint.

Here, the Settlement represents a compromise between experienced counsel for Plaintiffs and Defendants based upon each Party's honest assessment of the legal and factual strengths and weaknesses of their respective positions. *See* Hendrickson Dec. at ¶¶ 4-7; Paek Dec. at ¶¶ 9-11 (attached as Exhibit D to Joint Motion for Preliminary Approval). Based on employment data provided by Defendants, Plaintiffs calculated that Defendants owed approximately $2,959,038.30 in unpaid overtime wages to class members for the Class Period covered by the Settlement, excluding additional amounts for penalties, interest, fees, and costs. *See* Hendrickson Dec. at ¶ 6. From Plaintiffs' perspective, the Total Settlement Amount of $5,650,000.00 represents a significant recovery on behalf of the Class given the risks associated with this case. Of the $5,650,000.00 Total Settlement Amount, $3,718,427.44 was made available to Settlement Class Members, representing approximately 65.81% of the Total Settlement Amount. Hendrickson Dec. at ¶ 6.

Plaintiffs' agreement to resolve their claims on their own behalf and on behalf of the class is based upon Class Counsel's thorough and diligent investigation into the facts of this case, including, but not limited to: (i) speaking with numerous opt-in plaintiffs and putative class members; (ii) reviewing relevant documents; (iii) analyzing time and pay data provided by Defendants for all putative class members; (iv) researching the applicable law and the potential defenses; (v) developing the arguments for class and conditional certification and other

significant issues; and (vi) advocating for the rights of the putative class and collective. First, the resolution represents a relatively quick and certain payout for Class Members in light of Class Counsel's evaluation of the relative strengths and weaknesses of the case and applicable law. Second, resolving the action through a class settlement takes away any risk that the action may not ultimately proceed to trial on a class-wide basis. By resolving the case on a class-wide basis, class members will be receiving funds whereas there is significant risk that the amount paid to absent class members would be zero but for this Settlement. This concern was particularly poignant here because of the existence of arbitration agreements with class action waivers signed by numerous class members. Third, the case was highly disputed as to whether Defendants' compensation plan violated state and federal law with respect to overtime payments, and the merits of the allegations would remain disputed at least up to and including a verdict and likely last throughout an extended appeal process that would take years to resolve.

In short, the class, liability, and damage issues in this case were all hotly contested. The Parties reached this Settlement only after exchanging numerous position statements, informal discovery, and with the assistance of experienced mediator Hunter Hughes through multiple mediation sessions. Thus, the Settlement represents a compromise between experienced counsel for Plaintiffs and Defendants based upon each Party's honest assessment of the legal and factual strengths and weaknesses of their respective position. *See* Hendrickson Dec. at ¶ 4-7; *see also,* Paek Dec. at ¶¶ 9-11. This factor supports final approval.

2.     The risk, expense, complexity, and duration of further litigation supports final approval.

Another factor considered in approving a settlement is the complexity, expense, and likely duration of the litigation. *Offices for Justice,* 688 F.2d at 625. The Court must weigh the benefits of the proposed settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *See, e.g., Young v. Katz,* 447 F .2d 431,433-34 (5th Cir. 1971).

Federal and state hybrid wage and hour cases, such as this one, present unique challenges that support final approval. Employment cases, and specifically wage and hour cases, are

expensive and time consuming. That this is a class action further amplifies the economies of time, effort, and expense achieved by the Settlement. Inevitably, the certification process alone would add time and expense to the litigation process. The Settlement, on the other hand, provides Class Members substantial, prompt and efficient relief. The Settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *see also 4 Newberg on Class Actions* § 11.41 (citing cases).

First, as this Court is aware, the cost of ongoing litigation can be significant. While Class Counsel has already expended thousands of dollars in costs in litigating this action to the current stage, significant litigation costs remained, such as trial witness fees and costs (including experts).

Second, beyond the actual litigation costs that could potentially limit class member recoveries had this case proceeded, the risk, complexity and duration of further litigation supports early resolution. This action could be subject to legal and factual challenges that would potentially delay justice for years to come such as the risk that a class might not be certified or may be decertified pursuant to FRCP 23 or under the FLSA and may be subject to additional appellate proceedings. Of particular relevance to the reasonableness of the proposed Settlement are the numerous potentially dispositive defenses advanced by Defendants including, among other things, the arguments that the claims are individualized and, therefore, not susceptible to class or collective treatment; that all Class Members fall within state and federal exemptions from overtime requirements; and the applicability of penalties for the alleged violations. Given the significant legal and factual uncertainty relating to these defenses, the $5,650,000.00 Settlement represents a reasonable recovery based on the alleged violations. *See* Hendrickson Dec. at ¶¶ 4-7.

Furthermore, while Class Counsel believe that Plaintiffs' claims are meritorious, they are experienced class action litigators and understand that the outcome of class certification, trial, and any attendant appeals are inherently uncertain, as well as likely to consume many more months or years. *Id.* Having reviewed relevant compensation data and employment information, counsel for the Parties—all experienced class action litigators well versed in wage and hour law—arrived at a reasonable resolution through a protracted arm's-length direct negotiation

process, which continued through the negotiation of all details of the Settlement agreement and ancillary documents. *Id.* Ultimately, there were significant remaining risks for both Parties, and the Parties' Settlement represents an adequate and reasonable compromise of Plaintiffs' claims. *See* Hendrickson Dec. at ¶¶ 4-7; *see also,* Paek Dec. at ¶¶ 9-11. Therefore, this factor also supports final approval of the Settlement.

### 3.    The risk of maintaining class action status through trial

As discussed in the preceding section, Plaintiffs have faced and would continue to face significant risks in obtaining and maintaining the class certification under FRCP 23 and the FLSA if this litigation were to proceed. Thus, this factor, too, favors final approval of the settlement.

### 4.    The amount offered in settlement supports final approval.

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). A settlement may be fair and reasonable even if it provides only a fraction of what could have been obtained at trial. *See e.g., Linney v. Cellular Alaska P 'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (compromise is essence of settlement); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2d Cir. 1974) abrogated on other grounds (that proposed settlement may amount to only a fraction of potential recovery does not mean the proposed settlement is inadequate and should be disapproved).

Of the $5,650,000.00 maximum settlement amount, $3,718,427.44 was made available to Settlement Class Members, representing approximately 65.81% of the maximum settlement amount. Hendrickson Dec. at ¶ 6. After accounting for all anticipated fees, costs, and enhancements requested herein, each of the 949 Class Members who submitted a Claim is currently expected to receive an average amount of approximately $2,683.80 from the estimated Net Settlement Amount, for a total of approximately $2,546,927.35 (68.49% of the Net Settlement Fund) in claimed funds that will be disbursed to Class Members. These amounts represent a reasonable recovery for the Class, even without accounting for the risks that class treatment under FRCP 23 or the FLSA would be denied, or that Defendants would prevail on the merits. *See* Hendrickson Dec. at ¶¶ 4-7; *see also Villegas v. JP Morgan Chase & Co.*, No. CV 09-00261 SBA

(EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012); *In re Mega Fin.*, 213 F.3d at 459. In sum, this factor also weighs in favor of a finding that the terms of the Settlement are fair, adequate, and reasonable.

         5.    <u>The extent of discovery completed and stage of proceedings supports final approval.</u>

       This Settlement, following thorough informal discovery productions and genuine arms-length negotiation, is presumed fair. *See City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). As discussed in the motion for preliminary approval, the Parties engaged in extensive settlement discussions and informal discovery of the claims and defenses, including reviewing employment data and analyzing the relevant facts and authority. By the time the Parties agreed to discuss settlement, the Parties were well-versed in the facts and law applicable to the issues and had evaluated the merits of their claims and defenses. *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013). At the time the Settlement was reached, the Parties "ha[d] a clear view of the strengths and weaknesses of their cases." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985). In class action settlements, formal discovery is not needed where the parties have adequate information to make an informed decision about settlement. *Linney*, 151 F.3d at 1239. Here, this was clearly the case and thus, this factor weighs in favor of final approval.

         6.    <u>The experience and views of counsel support approval.</u>

       "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (citation and internal quotation marks omitted). The parties on both sides are also represented by counsel with broad experience in complex employment litigation and class actions. *See, e.g., In re Wirsbo Non-F1807 YBFs,* No. 2:08-cv-1223-NDF-MLC, 2015 WL 13665077, *5 (D. Nev. Oct. 26, 2015) (citing *Churchill, supra,* and noting that, in evaluating the sixth factor, that "attorneys on all sides of this action have extensive experience …); *Daniels v. Aria Resort & Casino, LLC,* No. 2:20-cv-00453-GMN-DJA, 2023 WL 2634613, *4 (D. Nev. Mar. 23, 2023) (discussing experience of both plaintiffs' and defense counsel in evaluating sixth factor). Here,

Class Counsel—wage and hour collective and class action specialists with many years of experience—support the Settlement. *See* Hendrickson Dec. at ¶¶ 4-7; Buck Dec. ¶¶ 2, 10.[2] Because Class Counsel are closely acquainted with the underlying litigation, significant "weight is accorded to the recommendation of counsel." *Nat'l Rural*, 221 F.R.D. at 528 (quoting *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). In addition, defense counsel has extensive class and collective action experience. *See* Paek Dec. at ¶¶ 4-8 (attached as Exhibit D to Joint Motion for Preliminary Approval). By way of example, lead defense counsel Montgomery Y. Paek, Esq. has litigated more than fifty (50) wage and hour class and collective actions and class action appeals, including the instant action, from inception through resolution, and has presented numerous Continuing Legal Education (CLE) presentations regarding class actions and wage and hour litigation to the Clark County Bar Association and via national webinars to attorneys through the United States. *Id.*

Counsel for both parties recommends that the Settlement be approved since they believe it is fair, reasonable, and adequate to the proposed class and because it reflects a reasoned compromise that takes into consideration the inherent risks in all employment class litigation and in this particular action. *See Nat'l Rural, supra*. Given the experience of the attorneys involved in this litigation, the Court should credit counsel's view that the settlement is fair, reasonable, and adequate. *See Rodriguez*, 563 F.3d at 967 (parties represented by capable counsel better positioned than courts to produce a settlement that fairly reflects each party's expected outcome). Accordingly, this factor weighs in favor of final approval as well.

> 7.    No governmental entity participated in this matter.

"No governmental entity participated in this matter; this factor, therefore, is irrelevant to the Court's analysis." *Zepeda v. PayPal, Inc.*, No. C 10-2500, 2017 U.S. Dist. LEXIS 43672, at *48 (N.D. Cal. Mar. 24, 2017). *Accord, Sciortino v. PepsiCo, Inc.*, No. 14-cv-00478, 2016 U.S. Dist. LEXIS 83937, at *20 (N.D. Cal. June 28, 2016) ("Because there is no government participant in this case, this factor is inapplicable.").

---

[2] The Buck Declaration was filed in support of the Parties' Joint Motion for Preliminary Approval as ECF No. 22-2.

8.      The reaction of the Class supports final approval.

To date, 949 class members have submitted claims (48.12%), nine putative class members submitted opt-out letters (0.46%), and only one individual, Mark Drewes, who opted out and is thus not a member of the Settlement Class, also submitted a letter purporting to assert objections to the settlement (0.05%). *See* Beltran Dec. at ¶¶ 10, 11. Accordingly, this factor supports final approval.

**D.  This Court Should Strike Mr. Drewes' Objection.**

Mr. Drewes lacks standing to object and this Court should strike his objections from the record on that basis. However, to the extent this Court considers the objections, Mr. Drewes' objections are untimely, appear to rest on a misunderstanding of the settlement agreement, and advance individualized concerns that are inapplicable to Mr. Drewes given that he has opted out of the settlement class.

1.      Mr. Drewes is not a class member and thus lacks standing to object.

"A party seeking to invoke the Court's jurisdiction has the burden of establishing standing." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-05944-JST, 2020 WL 1873554, at *4 (N.D. Cal. Mar. 11, 2020) (*citing In re Hydroxycut Marketing and Sales Practices Litig.*, No. 09md2087 BTM (KSC), 2013 WL 5275618, at *2 (S.D. Cal. Sept. 17, 2013) ("The party seeking to invoke the Court's jurisdiction—in this case, the Objectors—has the burden of establishing standing."). "Rule 23(e)(5) of the Federal Rules of Civil Procedure permits a ***class member*** to object to a proposed class settlement." *Hazlin v. Botanical Lab'ys, Inc.*, No. 13CV0618-KSC, 2015 WL 11237634, at *4 (S.D. Cal. May 20, 2015) (emphasis in original). "'The plain language of Rule 23(e) clearly contemplates only allowing class members to object to settlement proposals.' Thus, 'non-class members have no standing to object,' and routinely allowing them to inject their concerns at the settlement stage 'frustrates th[e] goal' of encouraging settlements."[3] *Id.* (*citing Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) *and San*

---

[3] "[N]on-class members have no standing to object, pursuant to a Rule 23(e) notice directed to class members, to a proposed class settlement. Interjection of the opposing views of non-class members should proceed via intervention under Rule 24." *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989).

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT

*Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999)); *see also*, *Miller v. Ghirardelli Chocolate Company*, 2015 WL 758094, *10 (N.D. Cal. Feb. 20, 2015) (collecting cases stating the proposition that non-class members lack standing to object to a class settlement).

Here, Mr. Drewes submitted a valid exclusion letter opting out of the Settlement Class. As such, he is not a class member.[4] *See*, *Jenson v. Cont'l Fin. Corp.*, 591 F.2d 477, 482 (8th Cir. 1979) ("The purpose of Rule 23(e), which prohibits class actions from being dismissed or compromised without court approval, is to protect the rights and interests of absent class members. Opt-outs and general creditors are not members of the class and hence are not entitled to the protection of Rule 23(e).") (*citing* Wright & Miller, Federal Practice and Procedure, s 1797 (1977); *Norman v. McKee*, 431 F.2d 769, 774 (9th Cir. 1970); *Kusner v. First Pennsylvania Corp.*, 74 F.R.D. 606 (E.D.Pa.1977), aff'd 577 F.2d 726 (3d Cir. 1978)). Because Mr. Drewes is not a member of the Settlement Class, he lacks standing to object to the Settlement and this Court should strike his objections on that basis.

### 2. Mr. Drewes' objections should be rejected as untimely.

In contrast to Mr. Drewes' valid exclusion letter opting out of the Settlement Class, which Mr. Drewes timely submitted to the Settlement Administrator, Mr. Drewes did not timely file his objections with the Court in compliance with the Settlement Agreement and this Court's Order. Specifically, the Settlement Agreement required that: "Class Members who wish to comment on or object to the Settlement must file with the District Court and serve on counsel for the Parties, not later than thirty (30) calendar days after the Settlement Administrator mails the Class Notice Packets a written objection to (or comment on), the Settlement setting forth the grounds for the objection. The statement will also indicate whether the Class Member intends to appear and

---

[4] After receiving Mr. Drewes' objection and exclusion letter, the Settlement Administrator mailed Mr. Drewes a letter asking him to clarify which of the two alternative choices (object or opt-out) he was electing. In response to the Settlement Administrator, Mr. Drewes maintained that he did not wish to withdraw either his objection or his exclusion letter opting out of the class, even if that meant that his objection would be stricken. *See* Beltran Dec. at ¶ 13.

comment or object at the Final Approval Hearing." Settlement at § III.D.4.a. The Court adopted this deadline in its Order granting Preliminary Approval,, ordering that, "[f]or any comments or objections to be considered at the hearing, the Class Member must file written objections and/or comments with the Clerk of Court . . . not later than thirty (30) days after the Settlement Administrator mails the Class Notice Packets." ECF No. 25, ¶ 16. And finally, the Notice clearly communicated this deadline to Mr. Drewes, informing him that: "To be valid, the Court and counsel must receive any written objections and/or notices of intent to appear at the hearing not later than September 3, 2024. A class member who fails to file and serve a written statement of objection in the manner described above and by the specified deadline will be deemed to have waived any objections and will be foreclosed from making any objection (whether by appeal or otherwise) to the settlement." Class Notice, p. 7.

Mr. Drewes did not file his objections with the Court until September 9th, 2024, six days after the September 3rd deadline. Thus, even if Mr. Drewes had standing to assert his objections, the objections were not timely filed and may be rejected by the Court on that alternative basis.

       3.   <u>Mr. Drewes' objections do not raise any legal reasons for disapproving the Settlement.</u>

Mr. Drewes identifies four objections in his letter. While it is difficult to surmise the reasoning behind Mr. Drewes' objections, each is addressed in turn below.

First, Mr. Drewes objects that: "I do not want the lawyers or three name individuals to speak or represent me. The three dealers filing this cost the dealers who worked 2024 WSOP on average $3000." Addressing the first part, Mr. Drewes opted out of the Settlement Class and is thus not represented by the attorneys or named plaintiffs in this proceeding. Addressing the second part, it is unclear what Mr. Drewes is referring to, but the Settlement does not cover the 2024 season and the Named Plaintiffs have not taken any actions in this case that would cost Class Members any money. To the contrary, Plaintiffs have secured a significant monetary recovery for Class Members thanks to their hard work in this case.

Second, Mr. Drewes objects that "awarding 3 individuals $15,000 and 1.9 million in legal fees to attorneys only to give the employee's who do deserve it $5 per credit a very bad business

venture." As an initial matter, Mr. Drewes appears to be mistaken on the details of the settlement. The estimated net settlement fund is $3,718,427.44. The average estimated settlement amount for each class member who submitted a claim is $2,683.80, and the highest estimated payment is $14,813.53. *See* Beltran at ¶ 18. For purposes of calculating the amounts owed to individual claimants, each overtime hour (i.e., settlement share) was worth approximately $14.70 under the settlement allocation formula, which also awarded an additional share to each claimant for unpaid training time. Mr. Drewes would have been entitled to an estimated settlement share of $1,124.55 had he submitted a claim. While Mr. Drewes does not explain why he believes these results represent a "bad business venture," the recoveries obtained for the Class are significant and justify the enhancement payments and attorneys' fees sought in this action as previously approved by this Court in its Order granting preliminary approval and as further set forth herein. But most importantly, because Mr. Drewes opted out of the Settlement Class, he is not sharing in the expense of the attorneys' fees or enhancements and the payment of such amounts does not affect him. Importantly, none of the individuals impacted by the payment of these amounts (i.e., class members) objected to the amounts or to the Settlement as a whole.

Third, Mr. Drewes objects that "[t]he majority of the employees mentioned in the above lawsuit are traveling dealers by trade, therefore most of employees did not receive proper notification in time to respond or opt out." As confirmed by the Settlement Administrator, over 98% of the Class Members (1,939 of 1,972) received the Notice, (*see* Beltran Dec. at ¶¶ 7-10). Moreover, 931 Class Members timely submitted claim forms before the September 3, 2024 deadline. This number represents approximately 47.21% of the total class. A total of 14 additional dealers submitted late claim forms in the time between the close of the notice period and the filing of this Motion, and the Parties agreed to accept all 14 late claim forms as valid, further eliminating any potential prejudice relating to the Notice period. *See* Beltran at ¶ 16. Mr. Drewes does not argue that he did not receive timely or sufficient notice, and it is clear that both he and the class were sufficiently informed of this lawsuit and the settlement proceedings through the court-approved and court-ordered notice process.

Fourth, Mr. Drewes shares his concern that Class Members might be retaliated against for participating in this lawsuit.[5] As an initial matter, Mr. Drewes opted out of the Settlement Class and thus does not face the kind of potential retaliation he fears. But in any event, Class Members are legally protected from retaliation for their participation in this suit, and Mr. Drewes' speculation concerning potential retaliation does not appear to have any factual or legal basis. Nor does Class Counsel have any reason to believe that Defendants would engage in retaliation against Mr. Drewes or any other class member.

Finally, Mr. Drewes also proposes that counsel should "contact every employee on the list and if 70% of the defendants [sic—presumably Mr. Drewes intended to refer to Class Members here] sign to opt-out than this lawsuit should not move forward." In this case, counsel provided Notice to all Class Member employees and less than half of one-percent (0.46%) elected to opt out. In contrast, nearly half of all Class Members (48.12%) filed claim forms to affirmatively opt in to the Settlement. Contrary to Mr. Drewes' apparent understanding, his concerns are not shared by Settlement Class Members and his objections do not appear to have any basis in fact or law. Mr. Drewes' sole objection (out of 1,972 class members) also represents less than one tenth of one percent of the total Settlement class. For all of the above reasons, his objections should be rejected and stricken by this Court.

**E.  The Class Representative Incentive Payments Should Be Approved.**

Named Plaintiffs Leann Mercer, Jocelyn Lewis, and Mike Brady have requested $15,000.00 each as class representative incentive payments for the services they rendered to the Classes, which is separate from any other amount they are entitled to receive under the Settlement as members of the Settlement Class. Such enhancements are routinely awarded to compensate plaintiffs for the services they provide in prosecuting a class action. *See, e.g., Ingram v. Coco-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga 2001) (enhancement awards of $30,000 to each named plaintiff for services provided to class); *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).

---

[5] Mr. Drewes also appears to raise this concern in the last sentence of his Third Objection.

The requested incentive awards totaling $45,000.00 are reasonable in light of the assistance provided by the class representatives. *See In Lo Re v. Chase Manhattan Corp.*, No. 76 Civ. 154 (MJL), 1979 WL 236, at *6 (S.D.N.Y. May 25, 1979). Specifically, the class representatives provided invaluable assistance to their counsel in explaining Defendants' alleged compensation policies and procedures and in providing information to assist in the settlement negotiations. *See* Declaration of Leann Mercer at ¶ 8; Declaration of Jocelyn Lewis at ¶ 5; Declaration of Mike Brady at ¶ 5.[6] Further, Plaintiffs incurred personal risk in bringing this lawsuit on behalf of the other persons in the Class. *See, e.g., Koehl v. Verio,* 142 Cal. App. 4th 1313, 1328 (2006) (in wage and hour action where the defendant prevailed at trial, the named plaintiffs were held liable, jointly and severally, for the defendant's attorneys' fees). Moreover, Plaintiffs could have been held liable for Defendants' costs if they were ultimately unsuccessful in resolving the case.

The Settlement Class Members were notified of the requested incentive payments totaling $45,000.00 for Class Representatives and none have objected thus far. *See In Lo Re*, 1979 WL 236, at *6 (no class member objections indicates approval of enhancement awards). In sum, because of the work and risk undertaken by Plaintiffs, this litigation has resulted in a valuable benefit to the Settlement Class. Thus, the incentive payments should be approved.

### F. Class Counsel's Fees and Costs Award Should Be Approved.

#### 1. Class Counsel's Fees and Costs Award is Properly Calculated as a Percentage of the Total Settlement Fund.

The Federal Rules of Civil Procedure expressly authorize an award of reasonable attorneys' fees and costs in a certified class action pursuant to the Parties' agreement or to the extent otherwise authorized by law. *See* Fed R. Civ. P. 23(h). Here, Class Counsel's fee award request is less than one-third of the gross Settlement Fund. The requested amount is less than the attorneys' fees Plaintiffs agreed to pay on a contingency basis (35%) and is less still than the

---

[6] The Mercer, Lewis, and Brady Declaration were filed in support of the Parties' Joint Motion for Preliminary Approval as ECF Nos. 22-4, 22-5, and 22-6, respectively.

market rate of 40-to-50 percent in other types of contingency cases. Therefore, the requested amount is presumptively fair, reasonable, and appropriate.

Under the "common fund" doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The purpose of the common fund approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

In *Boeing*, the Supreme Court specifically addressed "whether a proportionate share of the fees awarded to lawyers who represented the successful class may be assessed against the unclaimed portion of the fund." *Boeing*, 444 U.S. at 473. The Supreme Court found the total amount of the fund the proper denominator, approving fees of approximately $2,000,000.00 on a settlement valued at $7,000,000.00 where claims totaled $706,600 of $1,544,300 in unconverted debentures at issue, or 47% of the total. The court found that any latent reversionary right the defendant possessed contingent on the failure of absentee class members to exercise their present rights of possession did not defeat each class member's equitable obligation to share the expenses of the litigation. *Id.* at 481-82.

Moreover, in *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997), the gross settlement fund was $4.5 million, the Parties agreed to one-third of the total value for attorneys' fees, and the amount of the claims totaled just $10,000. The district court assessed the attorneys' fees as approximately 33% of the $10,000 amount claimed. The Ninth Circuit reversed, holding the fee award should have been based on one-third of the total settlement amount of $4.5 million as agreed upon by the Parties: "[T]he court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund . . . ." 129 F.3d at 1027.

Under these principles, a percentage of the common fund fee award is properly based on the total settlement value of $5,650,000.00 in this case. Class counsel's request for less than one-third of this amount ($1,853,333.33) is fair compensation for undertaking complex, risky,

expensive, and prolonged litigation solely on a contingency basis. *See* Hendrickson Dec. at ¶ 13. The request is in line with attorneys' fees awards in other wage-and-hour class actions. *See e.g., Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450-51 (E.D. Cal. 2013) (gathering cases and awarding 33% of total settlement amount).

Notwithstanding the beneficial nature of a percentage of recovery method, Class Counsel has also devoted significant hours to the case to date—e.g., pre-filing investigations, complaint drafting, motion practice, reviewing data/information pertaining to Plaintiff's claims, direct settlement discussions, participation in the mediation process, communication with settlement class members, and drafting settlement documents. Moreover, the Notice provided to Class Members plainly disclosed that $1,853,333.33 of the Settlement would be allocated to pay attorneys' fees, to which no Class Members have objected.

Class Counsel has incurred a total of $15,447.76 in costs during the course of this litigation. *See* Hendrickson Dec. at ¶ 14. This amount is less than the cap of $17,500.00 listed in the Notice to the Classes, to which no Class Members have objected.

Accordingly, the attorneys' fees and costs amounts should be finally judged as fair and reasonable. Other than Mr. Drewes, who has opted out of the Settlement Class and lacks standing, no individuals have objected to the Settlement in general or the attorneys' fees and costs. *See* Beltran Dec. at ¶ 11. The lack of Class Member objections further indicates that the fee and cost award sought is fair, reasonable, and appropriate. Accordingly, Class Counsel's fee and cost award should be approved.

### G.  The Class Should Be Finally Certified.

The Court has already conditionally certified the Settlement Class for settlement purposes. No Settlement Class Members have objected to the Settlement or appointment of Class Counsel or the Class Representatives. For all of the above reasons, in addition to the reasons stated in the Parties' Joint Motion for Preliminary Approval (ECF No. 22), the Court should finally certify the Settlement Class.

### IV.    CONCLUSION

For all the reasons set forth above, Plaintiffs respectfully request that the Parties' Collective and Class Action Settlement be finally approved, and Plaintiffs seek an Order from this Court for the following:

(1) Entering final approval of the collective and class action settlement;

(2) Confirming certification of the Rule 23 and 29 U.S.C. § 216(b) Class for purposes of settlement;

(3) Approving the Class Representative incentive payments;

(4) Approving Class Counsel's fees and costs; and

(5) Approving the costs of the Settlement Administrator.

Dated: September 23, 2024                    Respectfully Submitted,

                                             */s/ Joshua R. Hendrickson*
                                             Joshua R. Hendrickson
                                             HENDRICKSON LAW GROUP, PLLC

                                             Mark R. Thierman
                                             Joshua D. Buck
                                             Leah L. Jones
                                             THIERMAN BUCK, LLP

                                             *Attorneys for Plaintiffs and all others*
                                             *similarly situated.*

## **CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I hereby certify that on this date I electronically transmitted the foregoing **PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE INCENTIVE PAYMENTS** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

MONTGOMERY Y. PAEK, ESQ.
Nevada Bar No. 10176
AMY L. THOMPSON, ESQ.
Nevada Bar No. 11907
MICHAEL D. DISSINGER, ESQ.
Nevada Bar No. 15208
LITTLER MENDELSON, P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, Nevada 89169.5937
Telephone:    702.862.8800
Fax No.:      702.862.8811
mpaek@littler.com
athompson@littler.com
mdissinger@littler.com

*Attorneys for Defendants*

DATED: September 23, 2024

_/s/ Jennifer Edison-Strekal_
An Employee of Thierman Buck LLP